IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | |
|---|---|
| STEVEN G. SLUTZKER, | ) |
| | ) |
| Petitioner | ) CASE NO. 2:18-CV-00157-SPB-RAL |
| | ) |
| vs. | ) |
| | ) RICHARD A. LANZILLO |
| | ) UNITED STATES MAGISTRATE JUDGE |
| MARK CAPOZZA, SUPERINTENDENT | ) |
| SCI FAYETTE; | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| | ) ON PETITIONER'S MOTION FOR |
| Respondent | ) DISCOVERY |
| | ) |
| | ) ECF NO. 40 |
| | ) |

Steven G. Slutzker, a state prisoner currently incarcerated at the State Correctional

Institution at Fayette, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his state

criminal conviction in the Court of Common Pleas of Allegheny County, Pennsylvania. Per this

Court's order, Slutzker was granted leave to file an Amended Petition. He did so on January 18,

2022. *See* ECF No. 36. Presently before the Court is Slutzker's motion for leave to conduct

discovery. *See* ECF No. 40. The Respondents have filed a Response in Opposition to the

motion (ECF No. 42), and the matter is now ripe for disposition.

I.      Standard of Decision

Slutzker seeks leave to conduct discovery with respect to several of his habeas claims.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as

a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (emphasis omitted).

In a federal habeas case, discovery is authorized by Rule 6 of the Rules Governing Section 2254

Cases in the United States District Court. Discovery is permitted only by leave of court upon a

showing by the petitioner of "good cause," which may be made "where specific allegations

1

before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief[.]" *Harris v. Nelson*, 394 U.S. 286, 300 (1969). *See also Bracy*, 520 U.S. at 908-09.

Preliminarily, the court must identify the essential elements of a petitioner's claims and then address whether the requested discovery is related to a constitutional challenge raised in the petition. *Id*. at 905. Slutzker must also show good cause for the requested discovery by setting out specific allegations that lead the court to believe, if the facts were more fully developed, he may be entitled to relief. *Id*., 908-09. However, a petition cannot engage in a fishing expedition, and "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991). Once Slutzker has shown good cause, the scope and extent of discovery is left to the court's discretion. *Bracy*, 520 U.S. at 909.

This Court's review of Slutzker's claims is governed by 28 U.S.C. § 2254(d)(1), which confines our inquiry to "the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170 (2011). This raises the initial question whether Slutzker is entitled to any discovery at all; that is, whether *Pinholster* prohibits a habeas petitioner's request for discovery because such a process could result in the production of heretofore undisclosed evidence that was not before the state court. Respondents touch on this when they argue that Slutzker should not be permitted to use "this discovery request to prove innocence or as an invitation to retry this case in this Court." ECF No. 42, p. 9, ¶ 13 (citing *Lambert v. Blackwell*, 387 F.3d 210, 235-36 (3d Cir. 2004)).

The Court concludes that Slutzker's discovery request is not barred by *Pinholster*. That case concerned a prisoner who obtained federal habeas relief after receiving an evidentiary

hearing in federal court.  *Id.*, at 179.  The question presented was whether new evidence uncovered during the evidentiary hearing could be considered by the federal court in determining whether the state court's resolution of the claim was contrary to or involved an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1).  *Id.*, at 180.  The Supreme Court determined that it could not: "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition must overcome the limitation of § 2254 (d)(1) on the record that was before that state court."  *Id.*, at 185.

Considering the Supreme Court's opinion, the Court of Appeals for the Third Circuit has instructed that "[i]n light of *Pinholster*, district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d)."  *Brown v. Wenerowicz*, 663 F.3d  619, 629 (3d Cir. 2011).  However, the Court of Appeals has not specifically addressed the impact of *Pinholster* on the discovery process in habeas proceedings.  *See Williams v. Wetzel*, 2021 WL 1224130, at *3 (E.D. Pa. Mar. 31, 2021).  There is division among the district courts on this question.  Some have concluded that *Pinholster* bars discovery with respect to claims governed by § 2254(d)(1).  *See, e.g., Keaton v. Folino*, 2018 WL 8584252, at *53 (E.D. Pa. Nov. 15, 2018) (holding that because new evidence would not be admissible on claims presented to the state courts, additionally discovery regarding those claims was not warranted under *Pinholster*), recommendation adopted by 2019 WL 2525609 (E.D. Pa. June 28, 2018).  But other courts reject the argument that *Pinholster* bars discovery in such circumstances.  *See, e.g., Gibson v. Wetzel*, 2016 WL 1273626, at *2-3 (E.D. Pa., Mar. 31, 2016) (declining to apply *Pinholster* to Rule 6 discovery).

After reviewing the relevant authorities, this Court is not convinced that *Pinholster* is an outright bar to discovery in habeas cases.  First, and as numerous courts have recognized,

*Pinholster* did not address discovery under Rule 6, much less hold "that a petitioner seeking leave for discovery under Rule 6(a) must anticipatorily demonstrate—over and above what the apposite Supreme Court authority in *Bracy* requires—that the discovery sought would not place his claims in 'violation' of *Pinholster*." *Williams*, 2021 WL 1224130, at *4 (quoting *High v. Nevens*, 2013 WL 129 2694, at *4 (D. Nev. Mar. 29, 2013). Second, whether the evidence sought by a petitioner is ultimately considered is an inquiry distinct from the question whether he may obtain that evidence in discovery. *Id*. (citation omitted). This is because "[i]t would not be appropriate to make a determination as to the ultimate merits of the petition at [the discovery] stage when briefing  has not yet been completed." *Id*. Third, permitting discovery only after it appears *Pinholster* would not bar consideration of new evidence would add months of delay to the proceedings, "a result that could be avoided by simply permitting discovery that otherwise appears to be warranted under Rule 6." *Id*. (quoting *Gibson*, 2016 1273626, at *2-4)).

The Court also finds it significant that among his requests, Slutzker seeks discovery relating to his *Brady* claim. *See* ECF No. 40, p. 4; *Brady v. Maryland*, 373 U.S. 83 (19863). Slutzker contends, for example, that "the requested records of the law enforcement agencies involved in this case will lead to evidence relevant to Mr. Slutzker's claims, specifically his claims that he was denied due process by the Commonwealth's failure to comply with its discovery obligations." *Id*. Not only could discovery be relevant to the merits of the *Brady* claim, it could also potentially be relevant to a showing of cause and prejudice to the extent the Respondents may argue the claim is defaulted (in which case *Pinholster* would not apply). *Williams*, 2021 WL 1224130, at *4 (citing *Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013) (observing that the suppression and materiality elements of a *Brady* claim mirror the cause and prejudice requirements for overcoming procedural default)). And indeed, in *Pinholster*, the

Supreme Court left open the possibility that new evidence of withheld exculpatory witness statements, for example, might present a new claim for which the petitioner could try to show cause and prejudice. *See* 563 U.S. at 186 n.10.

Further, as provided by Rule 11 of the Rules Governing Habeas cases, and our own local Rule, to the extent that they are consistent, the Federal Rules of Civil Procedure are applicable here. *See* Rule 12, Rules Governing Habeas Cases; LCvR 2254 (F), (K). Rule 34 provides that Respondents produce items in their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). That is, prior to responding to such a request, "a party must undertake a reasonable search to determine whether it has any responsive documents in its possession, custody, or control." *Newill v. Campbell Transp. Co., Inc.*, 2013 WL 6002349, at *5 (W.D. Pa. Nov. 12, 2013) (additional citations omitted).

With these standards in mind, the Court now turns to the merits of Slutzker's discovery requests.

II.      Discussion and Analysis

         A.      Background

The detailed factual background of Slutzker's case is reported in the Court of Appeals' decision which affirmed this Court's prior grant of habeas relief. *See Slutzker v. Johnson*, 393 F.3d 373 (3d Cir. 2004). For purposes of this motion, a brief synopsis will suffice. Slutzker was convicted in 1992 of the murder of John Mudd, Sr., a crime which had taken place seventeen years earlier. At Slutzker's trial, the victim's son John Mudd, Jr., who was five years old at the time his father was killed, claimed to have recovered previously repressed memories of his father's murder, including an image of Slutzker fleeing the scene. *Id*. at 375. This Court granted Slutzker habeas relief after discovery revealed the failure to disclose twenty-one police reports

which included prior exculpatory statements from eyewitnesses.  *See Slutzker*, 393 F.3d at 388.

His case was remanded to the state court for retrial where Slutzker was again convicted.

Slutzker's pending habeas petition raises the following claims:

| Claim | Petition Citation |
| --- | --- |
| Excessive delays in bringing the 1975 homicide case to trial violated Slutzker's due process rights | ECF No. 36, p. 58-66 |
| Due process required dismissal of the charges due to *Brady* violation | ECF No. 36, p. 66-74 |
| Trial Counsel's numerous errors violated Sixth Amendment right to counsel | ECF No,. 36. P. 74-96 |
| Appellate Counsel's failure to raise multiple trial errors violated Slutzker's rights under the Sixth Amendment | ECF No. 36, p. 96-101 |
| Slutzker was denied his right to present a defense under the Sixth and Fourteenth Amendments by the exclusion of his proffered expert testimony concerning memory in this case involving claims of "repressed memory" | ECF No. 36, p. 101-109 |
| Slutzker's conviction rests on fundamentally unreliable evidence, in violation of the Due Process Clause | ECF No. 36, p. 109-117 |
| Slutzker's conviction violates the Due Process Clause because no rational trier of fact could have found proof of guilt beyond a reasonable doubt | ECF No. 36, p. 117-119 |
| Slutzker is actually innocent | ECF No. 36, p. 119-121 |
| Cumulative prejudicial error infected Slutzker's trial | ECF No. 36, p. 121-123 |

Slutzker's pending discovery requests include police records, crime lab records, and detective files from the various police departments and agencies that investigated the murder of John Mudd in 1975.  *See* ECF No 40, pp. 7-8.

B.      Slutzker's broad requests for police records will be denied.

Slutzker's requests can be divided into two groups. First, Slutzker makes several expansive, general requests for investigatory records from various police departments:

o   The entire records and all files from the Wilkinsburg Police Department;

o   The entire records and all files from the Allegheny County District Attorney Detectives who investigated John Mudd's death in 1975;

  o The entire records and all files from the Edgewood Police
    Department;

  o The entire records and all files from the Pennsylvania State
    Police; and

  o The entire records and all files from the Allegheny County
    Police and from the Allegheny County Crime Lab.

ECF No. 40, pp. 7-8.  In large part, these requests are tied to his *Brady* violation claim.  *See* ECF No. 36, pp. 66-74.  The Respondents contend that these requests amount to nothing more than a speculative fishing expedition and lack the good cause necessary for further discovery.  ECF No. 42, p. 9.

    Citing a history of prosecutorial noncompliance with *Brady*, Slutzker justifies his admittedly broad requests by first pointing to the *Brady* violations already found in this case, that is, the twenty-one police reports previously held to be *Brady* material that was not provided.  *See Slutzker*, 393 F.3d at 377-78.  He contends that during his retrial, additional *Brady* material such as the prosecutor's case file, continued to be unconstitutionally withheld.  ECF No, 40, p. 4.  Furthermore, Slutzker points to obfuscation by the prosecution when he asked for information relating to the hypnosis of the victim's son.  *Id.* at p. 5.  His argument seems to be that because it withheld information before, the Commonwealth is likely doing so again.

    But the Court agrees with the Respondents.  All of these wide-ranging requests are unparticularized and overly broad.  *See Zettlemoyer v. Fulcomer*, 923 F.3d 284, 301 (3d Cir. 1991) (holding that "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery.").  And mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery

request.[1]  *See Strickler v. Greene*, 527 U.S. 263, 286 (1999).  Furthermore, under *Brady* and its progeny, a prosecutor is only required to turn over all matters that could exculpate the defendant, including any evidence that could be used to impeach one of the prosecution's witnesses or undermine the prosecution's case.  *See e.g., Sivak v. Hardison*, 658 F.3d 898, 910 (9ᵗʰ Cir. 2011). Absent Slutzker pointing to specific information as to the availability of any exculpatory evidence in the requested files, his motion amounts to nothing more than a speculative inquiry that fails to meet Rule 6(a)'s good cause requirement.  *See Williams v. Beard*, 637 F.3d 195, 210-11 (3d Cir. 2011) (holding "[t]he law is clear … that … speculative discovery requests should be rejected.").

Additionally, much of the requested information had already been provided to Slutzker prior to his re-trial.[2]  At a motion hearing prior to trial, for example, the Commonwealth informed the Court that it searched and located reports from the Wilkinsburg Police Department and turned over what was discovered to Slutzker's defense team.  ECF No. 42-2, p. 6.  Also, the Commonwealth told the Court that it had searched for any and all records from the Pennsylvania State Police and the Edgewood Police Department but nothing relating to the Slutzker case was found.  *Id*., p. 8.  Thus, those reports must already be accessible to the Petitioner through a request to his prior defense counsel.  Accordingly, Slutzker has not established "good cause" for these broad categories of requested discovery and his motion will be denied as to them.

---

[1] As one Court noted, "otherwise every habeas petitioner would be able to obtain broad discovery simply by asserting that the Government withheld some unspecified evidence in violation of *Brady*.  This would turn the good-cause standard of Rule 6(a) into a license to engage in a fishing expedition."  *Gathers v. New York*, 2012 WL 71844, at *9 (E.D.N.Y. Jan. 10, 2012) (citations omitted).

[2] Indeed, issues relating to discovery appear to have been well-litigated and continually discussed prior to Slutzker's retrial in 2007.  *See* ECF 42-2, p. 4 (Counsel: "There has been a motion for discovery that Mr. Rubenstein filed." The Court: "We have gone through this a thousand times.  What is it you claim you don't have?").  Given that these matters were thoroughly pursued in state court, Slutzker has satisfied the requirement that he pursue his claims diligently in state court.  *See, e.g., Tedford v. Beard*, 2014 WL 4828873, at *4 (W.D. Pa. Sept. 29, 2014) (citations omitted).

C.      Slutzker's additional targeted discovery requests.

Slutzker does make several, more targeted requests for discovery information.  These relate to his due process, speedy trial, and ineffective assistance of counsel claims.  And here again, many of these requests were previously made prior to Slutzker's retrial in 2007.  Thus, in some respects then, Slutzker is asking for a second-bite at the discovery apple.  This is not a showing of "good cause" under the Rule.  *See Harris v. Nelson*, 394 U.S. 286, 299 (1969); *see also Isaacs v. Head*, 300 F.3d 1232, 1250 (11th Cir. 2002) (observing that the petitioner did not explain why the discovery he now seeks is any different from the discovery that was available to him in state courts and that, under such circumstances, the district court properly denied the petitioner's request to conduct additional discovery because he did not show good cause as required by Rule 6(a)).  Prior to the commencement of his retrial in 2007, Slutzker's counsel made several discovery requests.  In large part, he has asked for the same discovery again in his habeas proceeding.  The following accurately summarizes Slutzker's discovery requests now pending before this Court and their resolution by the state court at his retrial:

- o   The complete discovery provided to the defense following the previous grant of habeas relief;

- o   An inventory of items lost in the flood [of the Allegheny County PD evidence room];

- o   Any and all reports and records relevant to the chain of custody referenced in the October 15, 1991 Supplement Report (Torbin) and other physical evidence presented at Slutzker's trial primarily through the testimony of Robert Levine;

- o   Any and all reports, records, statements concerning the hypnosis of John Mudd, Jr.;

- o   Copies of all audio cassettes based on the former prosecutor's representation that ten audio cassettes exist;

- o   Copies of all reports and notes concerning interviews and statements of Cynthia Mann;

9

      o   Any recording of the Alan Pass interview of John Mudd, Jr.;

      o   Any polygraph testing relating to Clare Dugan, William Kreuger, and Arlene Mudd;

      o   Any reports of interviews or other investigations conducted following the habeas corpus grant in 2003.

*See, generally*, ECF No. 30.

In some instances, Slutzker has failed to demonstrate how the requested discovery is any different from the discovery that was available to him in the state courts. *See, e.g., Vega v. Secretary, DOC*, 2013 WL 12427123, at *2 (M.D. Fl. Feb. 7, 2013) (citing *Issacs*, 300 F.3d at 1250)). For example, the copies of audio cassettes he now requests were searched for and not located prior to his trial. And reports of polygraph testing conducted on several witnesses, including Arlene Mudd, were located and provided to the defense prior to Slutzker's retrial. *See* ECF No. 42-2, p. 7. Therefore, he has failed to demonstrate good cause for these items and, accordingly, is not entitled to the requested discovery. Other requests, however, have some merit. Each request will be discussed in detail.

      1.    Inventory of items lost in the evidence room flood.

Slutzker's request for an inventory of items lost and/or destroyed in the flooding of the Allegheny County evidence room is easily resolved. Counsel for the Respondents agreed during oral argument that such an inventory existed and that he would provide it to Petitioner's counsel. Accordingly, the Respondents are directed to provide that information to the Petitioner.

      2.    Any information or police reports relating to the purported hypnosis of John Mudd, Jr.

Slutzker seeks any police records relating to the alleged hypnosis of witness John Mudd, Jr., the victim's son. This witness testified at Slutzker's retrial that he had a "flashback of previously forgotten memories of the night of the homicide" and implicated Slutzker of the murder. ECF No. 30, p. 14. James Mudd, an uncle of the witness, testified that "he told

someone that John Jr. had been hypnotized."[3]  ECF No. 36, p. 28.  Slutzker now requests any police reports or other information relating to the possible hypnosis of this witness.  This request relates to his claim regarding the unreliability of the evidence presented during his retrial, principally the repressed memories of John Mudd, Jr.  *See id.* at p. 109.  Slutzker points out that because "one of the critical questions for the jury was whether John Mudd, Jr.'s claim that he had retrieved a previously lost memory from when he was five years old could be believed," the Commonwealth presented witnesses who testified that the five-year old's recollection "was genuine and could not have been the product of suggestion from the Mudd family" or anyone else.  *See* ECF No. 36, p. 106.  In response to a discovery request prior to retrial, the Commonwealth stated that it was "not aware of any evidence that John Mudd, Jr., was ever [sic] been hypnotized after his father's murder."  ECF No. 30-5, p. 2.  But a police report authored by a Detective Gratz and titled "Information Received from James Mudd" stated that the Mudd family "went so far as to have [John Mudd, Jr.] hypnotized."  ECF No. 30-10, p. 2.

This request is fairly focused and discrete.  There are indications in the record that hypnosis may have been used to revive or create a memory on the part of John Jr. and the Court finds that there is some basis to believe that there are potentially other records that may not have been disclosed at the time on this issue.  Accordingly, the Court concludes that Slutzker has demonstrated good cause for the production of this requested information and its production will be ordered.

       3.      Any recordings of the Alan Pass interview of John Mudd, Jr.

---

[3] As to whether John Mudd, Jr., had ever been hypnotized, James Mudd actually testified that "[t]he question came up, I brought [hypnosis] up thinking that it may be able to help, and I was kind of outvoted, shot down on it."  ECF No. 38-5, p. 120.  James Mudd later testified, however, that he remembered telling Detective Gratz that the family went so far as to have John Jr. hypnotized.  *See id*. 756-57.

Slutzker asks for "[a]ny recording of the Alan Pass interview of John Mudd, Jr."  ECF No. 40, p. 10.  This requests relate, in some respect, to the request for discovery regarding the alleged hypnosis of John Mudd, Jr.  This claim also relates to Slutzker's Sixth Amendment claim relating to the use of repressed memory testimony as well as his claim concerning the reliability of the evidence.  Pass, a purported "court certified forensic psychologist," conducted "an interview with John Mudd, Jr."  ECF No. 36, p. 4 n.3.  Slutzker contends that despite lacking such certification, Pass diagnosed John Jr. as suffering from post-traumatic stress disorder.  *Id.* Counsel for Slutzker acknowledged at the hearing that "we have a transcript from that recording" but seeks production of the actual audio cassette recordings of the interview itself.

The Court will order the Respondents to search for these audio cassettes and produce them if they can be located.  Although Slutzker has possession of a transcript of these recordings, the Court agrees with his Counsel that listening to the audio of the interview may reveal certain nuances not discernable from the reading of a dry transcript.  The Court further recognizes that Respondents have stated that they are not in possession of any audio tapes of this interview, but as is their obligation under the Rules, they should nonetheless conduct a reasonable search for the recordings.

Respondents point out that Alan Pass did not testify at Slutzker's retrial, so any discovery related to his interview of John Jr. may not be particularly relevant.  Slutzker acknowledges that Pass was not called as a witness at the retrial.  But that is not the point of the Petitioner's inquiry.  Slutzker's inquiry is related to the contention that aspects of his interview with John Jr. may have been so suggestive as to not resurrect a memory, but help create one.  That, the Court understands, is the basis for the request.  Thus, the Court concludes that Slutzker has shown good cause for the production of these materials.

4.   Any and all reports relevant to the chain of custody for the cartridge
referenced in Oct. 15, 1991 Supplemental Report (Torbin) and for the
other physical evidence presented at Slutzker's trial, primarily through the
testimony of Robert Levine.

This request will be discussed in two parts, beginning with the request for reports relating

to the chain of custody of a bullet cartridge presented as physical evidence at the retrial.  A report

dated October 15, 1991, and authored by a Detective Torbin, stated

In going through the original case file accordion folder in this case
which was turned over to this office by former Bureau of County
Detectives I found a pink envelope which contained a live .32
S&W ACP cartridge.  This item of evidence corresponded with a
report by Sgt. James Finello of that agency, dated Mon., 1-12-76,
which dealt with the arrest of Steven Slutzker and the search of his
residence … Further examination of the case file failed to show
whether or not this item of evidence had ever been submitted to the
Crime Lab for comparison with the spent casings recovered at the
scene.

ECF No. 30, p. 20 (citations to the record omitted).  This request appears to be associated with

Slutzker's claim that his trial counsel was ineffective in failing to challenge at trial any

irregularities in the chain of custody of this cartridge.  *See* ECF No. 36, p. 87.  The Respondents

contend that Slutzker's request for any reports relative to the chain of custody of this piece of

ammunition is improper because the Petitioner already knows where the cartridge came from due

to a report previously generated and provided.

The Court will order the Respondents to search for any other reports or documentation

related to the chain of custody of this cartridge.  Any further reports related to this piece of

evidence may support Slutzker's claim of ineffectiveness, especially in that he must establish

prejudice.  *See, e.g., Hutchinson v. Superintendent Greene SCI*, 860 Fed. Appx. 246, 248–49 (3d

Cir. 2021) ("To succeed on an ineffective-assistance-of-counsel claim under the Supreme

Court's landmark decision in *Strickland v. Washington*, 466 U.S. 668 (1984), [the Petitioner]

"had to show both that his counsel provided deficient assistance and that there was prejudice as a result.").

The second part of this request asks for "any and all reports" related to the chain of custody of "other physical evidence  presented at Slutzker's trial …through the testimony of Robert Levine." ECF No. 30, p. 23.  Slutzker's petition states that Levine was a forensic science "lab manager" for the Allegheny County Crime Lab. ECF No. 36, p. 34.  Levine examined several pieces of physical evidence, including bullets recovered from the scene as well as from John Mudd, Sr.'s body and a pistol.  *Id*.  The Court finds that this request is overly broad and too speculative to satisfy the good cause requirement of Rule 6.  Although Torbin's report of October 15, 1991, raised specific concerns and issues relating to the chain of custody of the cartridge found in the accordion file, this alone does not justify broad-based discovery concerning the chain of custody of all physical evidence  presented through the testimony of Robert Levine.

> 5.    Copies of all reports and notes concerning interviews and statements of Cynthia DeMann.

Next, Slutzker seeks production of all reports and notes relating to the trial testimony of Cynthia DeMann.  ECF No. 30, p. 23.  During the hearing on this motion, counsel for Slutzker explained that Cynthia DeMann was a neighbor who alleged that she saw Slutzker outside or near the victim's home around the time of the homicide and that she saw him with Arlene Mudd, the victim's wife.  Counsel acknowledged possession of three police reports relating to the testimony of this witness dating from 1975 and 1976.  At oral argument, Slutzker's counsel clarified that she had cause to believe that DeMann was "re-interviewed" by law enforcement in 1991 relating to her prior identification of Slutzker but that any reports from this re-interview are missing from the record.  Given the importance of DeMann's testimony and her prior

identification of Slutzker, the Court concludes he has demonstrated good cause to discover this material and directs the Respondents to search for and produce any reports within their possession, custody, or control related to the 1991 re-interview of this witness.

III.     Conclusion

As explained, the Petitioner's motion for discovery pursuant to Rule 6(a) of the Rules Governing Habeas Corpus cases will be GRANTED in part and DENIED in part.  An Order follows.

O R D E R

AND NOW, this _____ day of April, 2022, it is hereby ORDERED that Petitioner's Motion for Discovery pursuant to Rule 6(a) of the Rules Governing Habeas Corpus Cases is **GRANTED in part and DENIED in part,** as follows:

1.     The motion is **GRANTED** with respect to Petitioner's requests for production of the following information and materials within the possession, custody, or control of the Respondents:

A.     Any inventory of items lost in the flood of the Allegheny County police department evidence room relating to Slutzker's criminal prosecution;

B.     Any and all reports relating to the chain of custody of a .32 caliber S&W bullet cartridge in the possession of Detective Torbin, as referenced in an October 19, 1991, supplemental report;

C.     Any and all reports relating to or concerning the possible hypnosis of John Mudd, Jr.; and

D.     Any and all reports relating to interviews of and/or statements made by witness Cynthia DeMann.

Respondents shall produce any such documents or materials, if they exist, to counsel for the Petitioner on or before May 23, 2022.

2.     Petitioner's motion is **DENIED** as to all other requests for production under the Rule.

So ordered and entered this ___6th___ day of April, 2022.


BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE